UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELI BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:13-cv-4020 |
| v. | ) |
| | ) **ORAL ARGUMENT REQUESTED** |
| THE ROOSEVELT HOTEL | ) |
| CORPORATION N.V., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

 

LeClairRyan, A Professional Corporation
885 Third Avenue, Sixteenth Floor
New York, New York 10022
(212) 634-5052 Phone
(212) 634-5063 Fax

Lorenger & Carnell PLC
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1808 – Phone
(703) 684-1805 – Fax

*Counsel for Defendants*

Of Counsel:
    Robert W. Hellner
    Michael J. Lorenger (*pro hac vice*)

I.     **FLSA Exemption Cases Such as this one are Suitable for Summary Judgment.**

The question of whether an employee is exempt from the overtime requirements of the FLSA is well-suited for summary judgment when, as in this case, it is not disputed that the plaintiff regularly engaged in key management tasks that were central to the proper functioning of his department.  *See, e.g., Guinup v. Petr-All Petroleum Corp.,* 2010 WL 3338800 (N.D.N.Y. Aug. 23, 2010); *Kahn v. Superior Chicken & Ribs, Inc.,* 331 F. Supp. 2d 115 (E.D.N.Y. 2004).  Here, Plaintiff cannot defeat summary judgment by offering cursory denials of his work functions proven by undisputed documentary evidence, or by arguing that he did not understand the significance of his management tasks.  For these reasons, the material facts pertaining to Plaintiff's overtime claims are not the subject of a genuine dispute, and the application of the exemption is a question of law for the Court.[1]

II.    **Plaintiff's Self-Serving Affidavit Need Not be Credited.**

Plaintiff's Opposition relies almost exclusively on his own, 153-paragraph Affidavit, most of which is conclusory in nature and which, on crucial points, contradicts his prior sworn deposition testimony and his own words in the many emails he wrote and documents he signed. These instances are cataloged in the Rule 56.1 Statement, but some examples are worthy of note:

- Plaintiff's statement that he did not have authority to initiate discipline and never did so (Pl. Aff. ¶14) is contradicted by his deposition testimony that he "sometimes"

---

[1] Plaintiff's assertion that "where the Plaintiff disputes the scope and extent of his managerial duties, courts have consistently denied summary judgment" – Opp. at 5 – is not supported by the case citations he offers.  Indeed, if a plaintiff's mere denial of the scope and extent of his managerial duties was enough to defeat summary judgment, courts would never grant motions in these circumstances.  But of course they do, when a plaintiff's bald assertions are contradicted by record evidence and do not create a <u>genuine</u> dispute of fact.  In the cases cited by Plaintiff, the courts denied the employers' motions because the <u>employers</u> had failed to offer sufficient supporting evidence, not because of the plaintiffs' unsupported denials.  *See e.g., Trimmer v. Barnes & Noble, Inc.*, 2014 WL 3537867 at *7 (July 18, 2014 S.D.N.Y.) (defendants "point to no evidence" that the exempt duties were the plaintiffs' primary duties); *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 527 (S.D.N.Y. 2013) (noting defendant's <u>lack of evidence</u> concerning plaintiff's personnel decision recommendations); *Lema v. Mugs Ale House Bar*, 2014 WL 2917031 at *4-5 (June 26, 2014 E.D.N.Y.) (pointing to the "lack of evidence" presented by the defendant); *Costello v. Home Depot USA, Inc.*, 928 F.Supp.2d 473, 491 (D.Conn. 2013) (noting defendant's lack of evidence that plaintiff's managerial tasks were "critical to the success" of the store).  In contrast to these cases, Defendants here have presented ample evidence to support their motion.

"request[ed] that a write-up be given" and by his many emails, which show him initiating the disciplinary process. Ex. 2, Pl. Dep., at 189:10-189:12; Exs. 19, 20, 21, 23, 24.

- Plaintiff's claim that he "was not responsible for auditing the kitchen's and cooks' compliance standards and enforcing them" (Pl. Aff. ¶41) contradicts his testimony that "part of [his] job responsibility was to enforce and audit and comply with [cleanliness standards and sanitation rules]" and has been his duty "more so" since Chef Hohmann arrived. Ex. 2, Pl. Dep. at 134:4-134:12. The statement also is inconsistent with the undisputed facts that Plaintiff kept logs required by New York State law regarding food safety, completed Kitchen Department Self-Evaluation forms to ensure the Kitchen was operating in compliance with health and sanitation standards, and conducted walk-throughs of the Kitchen to identify sanitation issues (Statements 27, 28, 32; Ex. 35).

- Plaintiff attempts to minimize the significance of IHR-Email-2192 (Ex. 47), in which he refers to an assignment list "I used to make and post for the stewards" by stating that the word "make" really means "print out." Pl. Aff. ¶91. Similarly, Plaintiff states that when he wrote in IHR-Email-058381 (Ex. 47) that he "created a new schedule for the following week" he meant that he only "entered a new schedule for the cooks in the ADP payroll system." (Pl. Aff. ¶97). However, in his email, Plaintiff clearly states: "I had created a new schedule for the following week, 09/22/2012, and had posted it." Plaintiff could not have posted a schedule he created only in the ADP payroll database.

- Plaintiff states "I was not responsible for managing the budget or controlling costs." (Pl. Aff. ¶151). But at his deposition, he testified that he had been given this responsibility at least by 2010 and had handled it before that. Ex. 2, Pl. Dep. 61:2 – 61:18; *see also* Ex. 62 (Plaintiff describes his duties and accomplishments to include sending daily communications with "labor cost," "costing of events at Mad 46," "wedding costing and inventories," and introducing new skirt steak "at a lower cost."); Reply Ex. 81.

- Clearly troubled by the email he wrote on March 7, 2013, describing to his new boss his many management and supervisory duties (Ex. 62), Plaintiff states that he was describing only the duties he assumed for about three months in the fall of 2012 following Chef Rupert's departure. Pl. Aff. ¶121. This statement is provably false, as Plaintiff's email unambiguously refers several times to events that occurred before Chef Rupert left. *See generally* Defendants' Reply to Plaintiff's Counter-Statement 80.

- In his deposition, Plaintiff testified there are "actual schedules that you would see that I have no days off; that I am scheduled doubles every day." Reply Ex. 64, Pl. Dep., 399:7-400:7. Of course, no such schedules exist. *See* Ex. 57; Reply Ex. 83. For that reason, Plaintiff offered different testimony in his Affidavit, stating that he "often" worked more days than he was scheduled to work. (Pl. Aff. ¶123-126). But in a 2011 email – Plaintiff's third year of employment – Plaintiff explained to another manager that "I had Wednesday and Thursday off, as I do every week." Reply Ex. 64, Pl. Dep., 404:12-410:5.

It is well-established in the Second Circuit that "a party may not create an issue of fact by

3

submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Ramos v. Baldor Specialty Foods, Inc.,* 2011 WL 2565330, *7 (S.D.N.Y. June 16, 2011); *see also Golden v. Merrill Lynch Co., Inc.,* 2007 WL 4299443, *9 (S.D.N.Y. Dec. 6, 2007); *Ahlers v. Kaskiw*, 2014 WL 4184752 at n.15 (N.D.N.Y Aug. 21, 2014). Similarly, conclusory statements in depositions and affidavits are insufficient to defeat a motion for summary judgment supported by compelling written record evidence. *See Kahn*, 331 F.Supp.2d at 118 (rejecting plaintiff's "conclusory statements" that his primary duty was that of a cashier); *Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cnty.*, 803 F.Supp.2d 168, 176-77 (E.D.N.Y. 2011) (rejecting plaintiff's "self-serving deposition testimony, and naked denials" in favor of "Defendant's proffered written evidence – in the form of written evaluations, emails, and memoranda."). Here, Plaintiff cannot create genuine dispute of material fact with self-serving denials of aspects of his work that have been shown through his deposition testimony and his own emails to be indisputably true.[2]

### III.     Plaintiff Cannot Defeat Summary Judgment by Arguing he was Ineffective.

Much of Plaintiff's Opposition is built around his testimony that he did not understand his management tasks and was reluctant to take action without his boss's approval. *See, e.g.*, Statement 28 (Plaintiff testifies that he could complete Kitchen Department Self-Evaluation Forms in "just a couple of minutes" when Chef Rupert testified that completing a form properly would take "between two and three hours" – Reply Ex. 66, R. Leitner Dep., 95:21-95:24);

---

[2] In a related fashion, Plaintiff has carefully crafted passages in his Affidavit to be misleading. For example, in Statement 27, Defendants state that "Plaintiff kept logs required by New York State law regarding food safety." Plaintiff states that this statement is "disputed" because he did not "keep any logs in his possession." But this is no dispute at all, because Defendants' make no assertion that Plaintiff kept health and safety logs "in his possession." Similarly, in Paragraph 55 of Plaintiff's Affidavit, Plaintiff states that his payroll duties were "clerical" because "I was not approving any scheduling changes or adjustments *when I made these edits*." Pl. Aff. ¶ 55 (emphasis added). Of course he wasn't "approving" any changes "when" he was making the edits - because by the time Plaintiff was editing the payroll database itself, "scheduling changes" and "adjustments" had already been approved in the prior week.

4

Statement 33 (Plaintiff viewed his work as "clerical" when the Hotel believed he was completing a substantive payroll review – Ex. 11, E. Ortiz Dec., ¶15, Reply Ex. 74, Supp. E. Ortiz Dec., ¶7); Statement 41 (Plaintiff asserts that he did not spend much time checking the work of the Cooks and giving them instructions, even though both of his bosses testified they relied on his floor presence to run the Kitchen – Ex. 4, Leitner Dep., at 65:14-67:16, 89:17-92:13; Ex. 3, Hohmann Dep., at 52:14-53:11; Ex. 12, R. Hohmann Dec., at ¶¶ 4, 5, 7); Statement 58 (Plaintiff admits that he was invited to mandatory managers' meetings but rarely attended); Statement 59 (Plaintiff admits that he was repeatedly sent financial reports relevant to Kitchen costs and budgets, but claims he "could not even understand them").  These arguments are not sufficient to create a genuine dispute of fact concerning Plaintiff's performance of these management duties.  Instead, all Plaintiff has proven, if anything, is that he did not perform these duties well.

Similarly, Plaintiff repeated attempts to create a dispute of fact concerning his authority to direct and discipline the Cooks by arguing that the Cooks did not respect him and on many occasions would not follow his instructions, *see, e.g.*, Statement 42, 44, 56, are immaterial. Indeed, if Plaintiff had not had the authority to give the Cooks instructions, he would not have complained on those occasions when they did not follow them, and he certainly would not have sought to impose discipline for "insubordination."  *See, e.g.*, Ex. 19.

**IV.  Plaintiff's Arguments that he was Required in Some Cases to Secure Approval from the Executive Chef does not Render the Exemption Inapplicable.**

Plaintiff's argument that he often did, and in some cases was required to, seek the Executive Chef's or Human Resources' authority on certain matters, is not sufficient to defeat application of the exemption.  It is well-established that lack of final supervisory authority as to specific management duties "does not take [a plaintiff] out of the realm of being a manager in the organization."  *Scott v. SSP Am., Inc.,* 2011 U.S. Dist. LEXIS 32819, at *13, 2011 WL 1204406

5

(E.D.N.Y. Mar. 29, 2011). Indeed, in the closely analogous case of *Burson v. Viking Forge Corp.*, 661 F.Supp.2d 794 (N.D. Ohio 2009), the plaintiff argued he was not exempt because the safety training he provided to his shift workers was dictated by company policy; performance appraisals were prepared from standardized forms; he had to comply with the company's discipline policy; he was not responsible for creating a production schedule for his shift; and many of his management decisions, such as sending an employee home, had to be approved by his superior. *Id.* at 803-04. The Court had no trouble concluding that close supervision of this sort does not defeat the exemption. *Id.* at 804; *see also Pollard v. GPM Investments, LLC*, 2011 WL 864329, *8 (E.D. Va. Mar. 10, 2011) (citing cases from the 1st 4th and 8th Circuits).

Besides, Plaintiff's proffer of evidence on these points fails to raise a genuine dispute of fact concerning his authority to act unilaterally if necessary. For example, in Statement 52 Plaintiff disputes the fact that he had the authority to, and did, call the Cooks in on their days off. But Plaintiff provides no evidence to support this alleged dispute. In the cited passage of Chef Rupert's deposition, Chef Rupert testified that "of course" Plaintiff had the authority to call in Cooks on their day off; that Plaintiff "may shoot me a text or give me a phone call to say what is up"; and that he "trust[ed Plaintiff's] judgment when Plaintiff decided that he needed to call a Cook into work. Pl. Ex. B , Leitner Dep. at 75:13-76:4. Moreover, as Ex. 49 makes clear, it was Plaintiff – <u>not</u> <u>the</u> <u>Executive</u> <u>Chef</u> – who gave Cooks the instruction to come into work.[3]

---

[3] Similarly ineffective is Plaintiff's argument that he was rarely at work without another manager present. The manager schedules show that there were extensive periods every single week when Plaintiff was the only Kitchen Manager on duty and that the Hotel intentionally scheduled the three managers to ensure that at least one of them was always present. Reply Ex. 83. Additionally, both Executive Chefs testified that their Sous Chefs carried out management functions even when they were there – such as supervising the floor. Ex. 4, Leitner Dep., at 65:14-67:16, 89:17-92:13; Ex. 3, Hohmann Dep., at 52:14-53:11; Ex. 12, R. Hohmann Dec., at ¶¶ 4, 5, 7. Finally, Plaintiff's emails show that he carried these duties out "customarily" and "regularly." Reply Ex. 82 (examples of Plaintiff's daily communications).

V.   **Plaintiff's Argument that he Spent the Majority if his Time Cooking and Cleaning does not Create a Dispute of Material Fact Sufficient to Defeat Summary Judgment.**

Plaintiff's reliance on his alleged non-exempt duties are insufficient, as a matter of law, to defeat application of the executive exemption, even if Plaintiff's self-serving testimony that he spent 90% of his time cooking and cleaning were true. This proposition is so well-established, across all Circuits, that it cannot be debated. *See, e.g., Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1113–14 (9th Cir. 2001); *Spinden v. GS Roofing Products Co., Inc.,* 94 F.3d 421, 427 (8th Cir. 1996); *Jones v. Tiller,* 1995 WL 712674, at *3 (10th Cir. Dec. 5, 1995); *Murray v. Stuckey's, Inc.,* 939 F.2d 614, 618 (8th Cir. 1991); *Mims v. Starbucks Corp.,* 2007 WL 10369, *6 (S.D. Tex. Jan. 2, 2007); *Posely v. Eckerd Corp.,* 433 F.Supp.2d 1287, 1303 (S.D. Fla. 2006); *Jackson v. Advance Auto Parts, Inc.,* 362 F.Supp.2d 1323 (N.D. Ga. 2005). In all of these cases, the plaintiffs testified that they spent approximately 60 percent to 90 percent of their time performing non-exempt work; yet the courts held them to be exempt managers every time, largely because, in the words of the *Jackson* court, "the employee's primary duty is what she does that is of principal value to the employer." *Jackson*, 362 F.Supp.2d at 1334 ("[W]here Plaintiffs 'down-play and minimize the importance of [their] position[s], testifying that [they] spent most of [their] time performing routine non-managerial jobs,' [t]he courts have tended to reject such post-hoc efforts to minimize the relative importance of managerial duties.").

It is also worth noting that the undisputed evidence shows that Plaintiff did not spend 90% of his time cooking and cleaning. If true, Plaintiff's claim would mean that he spent less than 10% of his working time each week on the many management functions described in Defendants' Rule 56.1 Statement, meaning that somehow in this brief window Plaintiff handled discipline, completed payroll, completed audits and compliance reports, performed Kitchen walk-throughs, attended BEO meetings, and, of course, sent and responded to thousands of

7

emails. The evidence Plaintiff submits in support of this allegation (found in Statement 85) does not support his assertion, either. The emails attached as Exhibit V – the only record evidence Plaintiff cites – show very little actual cooking on Plaintiff's part. Indeed, the vast majority of Plaintiff's Daily Communications show a *bona fide* Kitchen manager reporting "hand off" items to the next manager. *See* Reply Ex. 82 (daily communications, incl. IHR-Email-055213).

Moreover, Defendants do not dispute that Plaintiff, like his Executive Chef and fellow Sous Chef, cooked food. They were employed as Chefs in a major commercial Kitchen, after all. But it is equally undisputed that much of this cooking was foisted on them because of their roles as managers. Indeed, taking Plaintiff's "cooking" allegations at face value reveals that he cooked for such things as VIP events, ownership dinners, "showcase" events, tastings, and similar things. *See* Plaintiff's Statements 89, 91, 100-104. The Executive Chef did exactly the same thing. Reply Ex. 66, R. Leitner Dep., at 16:22-17:2; 117:6-118:17; 120:10-121:11; Reply Ex. 65, R. Hohmann Dep. at 54:21-55:8. The undisputed evidence also shows that much of Plaintiff's cooking took place when the Cooks who reported to him were too busy to get orders out in a timely fashion, Reply Ex. 64, Pl. Dep., 286:8-288:6, or when there was a dispute with a Union employee concerning whether Cooks were required to carry out specific tasks, such as making VIP amenities. Reply Ex. 69, S. Davidson Dep., at 142:20-148:14; Reply Ex. 66, R. Leitner Dep., at 30:25-31:9; Reply Ex. 65, R. Hohmann Dep., at 94:20-95:19. The same is true of Plaintiff's alleged "cleaning" activities, which according to his own evidence took place when Stewards or others failed to carry out their assigned duties. Reply Ex. 64, Pl. Dep., 301:12-302:8; *see also* Reply Ex. 66, R. Leitner Dep., 34:2-34:19; Reply Ex. 87. Of all the functions a manager carries out, perhaps the most important is stepping in to get the job done when his subordinates fail.

8

Finally, there is no genuine dispute that Plaintiff supervised the Kitchen while he was cooking. Plaintiff admits, for example, that his "Kitchen walkthroughs" (in which he identified operational deficiencies and cleanliness and sanitation concerns) were "incorporated into Plaintiff's day" and that he exercised his discretion in determining when to "jump on the line" and help out and when not to. Pl. Aff. ¶ 51; Reply Ex. 64, Pl. Dep., 286:8-288:6 (testifying that he would sometimes step in and help instead of "letting [a Cook] drown"); Reply Ex. 72, L. Jackson Dep., 26:19-27:11 (testifying that Plaintiff would help out cooking but when pending tickets cleared he would step out and continue inspecting dishes). This type of non-exempt work – carrying out management functions concurrently with non-management ones and helping out subordinates in times of need – is consistent with a manager's role. *See* 29 CFR § 541.106(a) (noting that "exempt executives make the decision regarding when to perform nonexempt duties"); *Golden*, 2007 WL 4299443 at *15 ("[E]ven supervisors who must lend an extra hand during high volume periods have, as their 'primary duty,' managerial responsibilities."); *McCall v. First Tennessee Bank Nat. Ass'n*, 2014 WL 2159007, *7 (M.D. Tenn. May 23, 2014) (while plaintiff was performing non-exempt work as a bank teller, she also observed other tellers, initiated discipline, and disseminated information from manager meetings).

## VI.     **Plaintiff's Other Arguments do not Defeat Application of the Exemption.**

Plaintiff's other arguments are also insufficient to defeat summary judgment.

First, a manager's lack of authority to hire or fire employees does not render him non-exempt. *See* 29 C.F.R. § 541.100(a)(4); *McCall*, 2014 WL 2159007 at *5; *Haines v. Southern Retailers, Inc.,* 939 F.Supp. 441, 450 (E.D.Va. 1996). This is particularly true given the union environment at the Hotel, where terminations are controlled by the CBA and where there was only one involuntary termination of a Cook during Plaintiff's tenure. *See* Reply Ex. 74, E. Ortiz

Dec., ¶6.  Dispositive here, however, is the undisputed fact that Plaintiff had the authority to recommend terminations and layoffs and that these recommendations were given particular weight, as proven by his recommendation of layoffs in late 2012, which was acted on by his supervisor, resulting in the layoff of five Cooks.  Ex. 51 (IHR-Email-051401); Ex. 11, E. Ortiz Dec., ¶16; Ex. 12, R. Hohmann Dec., at ¶ 12.  This evidence stands unrefuted.[4]

Second, Plaintiff tries to dismiss as self-serving his Performance Review (Ex. 55) and Performance Improvement Plan (Ex. 56).  However, these documents were drafted long before there was any hint of litigation, and therefore they could have served no purpose other than to encourage Plaintiff to carry out more effectively the duties <u>management considered essential</u> to the operation of the Kitchen, which is the keystone of the "primary duty" analysis.

Third, Plaintiff's attempt to distance himself from his resume does not create a genuine dispute of material fact, particularly given that less than five months after writing it Plaintiff wrote an email to his boss asking him to reconsider his latest performance review and touting his performance of many of the same management tasks identified in his resume. *Compare* Ex. 61 *with* Ex. 62.  Therefore, Plaintiff's resume is significant because:  (i) it describes the very same management duties that are evidenced by Plaintiff's emails and Hotel documents reflecting his performance of these duties; and (ii) Plaintiff himself confirmed his performance of these duties only a few months later as he sought to have his performance evaluation reconsidered.  When considered in light of Plaintiff's many references to his management functions and his references to himself as a "manager," *Mota v. Imperial Parking Systems*, 2010 WL 3377497 (S.D.N.Y. Aug. 24, 2010) becomes instructive.  There, the Court noted that while job titles and similar descriptions are not dispositive, "there are so many references to plaintiff as a supervisor . . . that

---

[4] For this reason, Plaintiff's citations to *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508 (S.D.N.Y. 2013) and *Trimmer v. Barnes & Noble, Inc.*, 2014 WL 3537867 (S.D.N.Y. 2014) are inapposite.  In both cases, the defendants failed to introduce <u>any</u> evidence or examples on this factor.

it is impossible not to contrast these references with the total lack of any documentation referring to [plaintiff] as a "checker" prior to the commencement of this lawsuit." *Id.* at *4-5.

Plaintiff is also incorrect in arguing that comparing his duties to those of the Cooks is irrelevant.  Although Plaintiff does not become an exempt manager simply because the Cooks are not, application of the "primary duty" test does turn, in part, on the importance of Plaintiff's management duties to the operation of the Kitchen.  Accordingly, determining the "most important" role Plaintiff carried out in the Kitchen from the perspective of the employer depends, in part, on comparing his duties to those of the individuals he supervised.  This comparison is anticipated by the FLSA regulations, which require consideration of such things as "the relative importance" of exempt and non-exempt duties and the relationship between the employee's salary and the wages of others for the kind of nonexempt work performed by the employee.  29 C.F.R. § 541.700.

Finally, Defendants are aware of no authority endorsing the mathematical methodology used by Plaintiff in his argument that the Cooks were paid more than he was.  Moreover, Plaintiff has presented no evidence that any Cooks <u>ever</u> worked 90 hours per week and thus there is no evidence any of the Cooks could have earned compensation equal to Plaintiff's earnings.

For all these reasons and those set forth in Defendants' Opening Brief, Defendants respectfully request that their Motion for Partial Summary Judgment be granted.

                                        Respectfully submitted,
                                        /s/
                                        LeClairRyan, A Professional Corporation
                                        885 Third Avenue, Sixteenth Floor
                                        New York, New York 10022
                                        T: (212) 634-5052 Phone / F: (212) 634-5063

                                        *and*

                                        Lorenger & Carnell PLC

651 South Washington Street
Alexandria, Virginia 22314
T: (703) 684-1808 /  F: (703) 684-1805

*Counsel for Defendants*

12